UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 11-028

ALVIN L. NEAL, JR.                          SECTION: R(3)


**ORDER AND REASONS**

Before the Court is defendant Alvin L. Neal, Jr.'s motion to suppress evidence obtained in connection with the search of his residence on December 21, 2010.[1] Defendant argues that at the time of the search, agents lacked a warrant and that no exigent circumstances existed.  The Government opposes the motion and contends that the agents executed a valid protective sweep of the residence.[2]  The Court held an evidentiary hearing on the motion. After consideration of the testimony and other evidence elicited at the hearing, the Court finds that the Government failed to demonstrate the presence of exigent circumstances but that the evidence seized is admissible under the independent source exception to the exclusionary rule.  The Court therefore DENIES the defendant's motion.

_____

[1]    R. Doc. 24.

[2]    R. Doc. 33.

I.    **BACKGROUND**

Defendant Alvin L. Neal, Jr. was indicted in a five-count indictment for one count of distributing cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1); one count of possessing with the intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2); one count of possessing with the intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 3); one count of possessing firearms in furtherance of a drug trafficking crime, in violation 18 U.S.C. § 924(c)(1)(A)(I) (Count 4); and one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On December 21, 2010, Drug Enforcement Agency ("DEA") Special Agent Mark Nicholson contacted Detective Gary Barteet and Officer Elvin Modica of the Jefferson Parish Sheriff's Office for assistance with a narcotics investigation.  Special Agent Nicholson informed Detective Barteet and Officer Modica that agents had detained defendant for possession with the intent to distribute cocaine hydrochloride.  Special Agent Nicholson further informed Detective Barteet and Officer Modica that cooperating individuals and an anonymous source informed DEA agents that large quantities of narcotics were at defendant's

residence at 1229 Wyndham South, Gretna, Louisiana.  Detective
Barteet then went to defendant's residence while Office Modica
remained behind to draft a warrant application.  Detective
Barteet stayed in telephone contact with agents at defendant's
residence, but he did not have radio contact with them.

Detective Barteet estimated he arrived at defendant's
residence at 7:30 p.m.  Detective Barteet testified that when he
arrived at defendant's residence, he observed DEA agents and
other law enforcement officials in surveillance position.  He
estimated that they had been observing the residence for
approximately fifteen to twenty minutes.  There is no evidence
that anyone entered the house during that period of surveillance.
The only person agents observed leaving the residence was a woman
with small children.  Detective Barteet testified that he first
noticed the woman, later identified as Dionne Knapper, on the
front porch of the residence and saw her shut the front door.
Knapper testified that she did not know that defendant had been
detained at this time.  She had left the residence to visit her
mother.  As she attempted to enter her car, agents detained
Knapper for questioning.  Knapper told agents that she and
defendant were romantically involved and that she had recently
moved into the residence.  Detective Barteet testified that when
agents questioned Knapper about defendant's employment, she
informed agents that he was a drug dealer and kept drugs and guns

in the residence.  Although Knapper denied even knowing that defendant dealt drugs until much later, the Court does not credit her testimony on this point because of her relationship with the defendant and because sizeable drug paraphernalia lay in plain view in the house.  Detective Barteet further testified that Knapper stated that she did not believe anyone else was in the house, which was consistent with Knapper's testimony that she told agents that no one was present in the house.

While agents questioned Knapper, Detective Barteet noticed surveillance cameras attached to the exterior of the residence. He testified that he became concerned that persons inside the residence could see the agents and either arm themselves or destroy evidence.  Detective Barteet informed Knapper that agents wanted to secure the house and make sure no other persons were present; he also testified that he did not see or hear any indication that other persons were inside the residence.  Knapper provided agents with a key to the house, and Detective Barteet and other agents entered the residence to perform a security sweep.  They did not find any persons inside, but Detective Barteet testified that in the kitchen agents saw in plain view a kilogram press and a blender, both with white residue.  After agents secured the residence, they exited the premises.

Detective Barteet then called Officer Modica, who was still working on the warrant application.  Detective Barteet informed

4

Officer Modica what Knapper told the agents – that defendant was a drug dealer, and had drugs and guns in the residence – and informed Officer Modica that agents observed a kilogram press with residue and a blender with residue in the kitchen. Detective Barteet had also given Officer Modica a description of the residence for purposes of drafting the warrant application. Officer Modica testified that Detective Bartlett apprised him about the protective sweep, but he did not use any information gleaned from the protective sweep in the warrant application.

The warrant application reflects Knapper's statement that she had recently moved into the residence, and that she believed the defendant was selling drugs and keeping large quantities of cash at the residence.[3]  It also states that when agents detained the defendant, he was "found in possession of approximately 3 ounces of cocaine."[4]  The application further provides that "a second cooperating individual, who has been a life long friend of Neal and deemed credible by the investigators, stated to the investigators that within the past 12 hours he had been at Neal's residence and witnessed Neal in possession of a large quantity of cocaine and heroin."[5]  Finally, the application reflects

_____

[3]      (Govt. Ex. 1).

[4]      (*Id.*).

[5]      (*Id.*).

information from an anonymous source that the defendant kept large quantities of narcotics and currency at his residence.[6]

Although the application does not refer to the kilogram press or the blender, it does specify that agents sought "paraphernalia associated with the packaging, distribution and use of a controlled substance, specifically cocaine and heroin."[7] Officer Modica testified that he did not include in the application the items discovered in the protective sweep because he believed that there was probable cause to search the residence without those items, and he did not want to taint the warrant. He likewise did not refer to Knapper's statement about weapons because he believed they had probable cause without the presence of weapons.  He further testified that he did not inform the magistrate about the items discovered during the protective sweep.  Officer Modica also testified that the basis for the paraphernalia request was not the information relayed to him by Detective Barteet; rather, Officer Modica included the paraphernalia request as a matter of course based on the large quantities of drugs described by the confidential informant and the anonymous source, and the quantity of drugs found on the defendant.  Moreover, the amount of cocaine found on the defendant at the time of his detention constituted possession

---

[6]     (*Id.*).

[7]     (*Id.*).

with the intent to distribute.  Accordingly, Officer Modica testified that he included a request for paraphernalia in the application.  The magistrate issued the warrant at 9:03 p.m.

Meanwhile, Knapper had remained outside the residence with her two small children while the agents executed the protective sweep and waited for the warrant.  When she told the agents that her children were cold, they let her reenter the residence in order to keep warm.  Detective Barteet testified that one agent waited in the living room with Knapper and her children. Knapper, however, testified that five or six agents entered the residence and continued to search.  When Detective Barteet knew that the warrant had been signed – but not when he had it in hand – he requested the assistance of a canine unit and performed a systematic search of the residence.  Because defendant was in custody, agents did not serve him with the warrant, although they gave him a copy of it later.  Detective Barteet testified that they left a copy of the warrant at the residence.  The search yielded over 866.1 grams of cocaine hydrochloride, 445.3 grams of cocaine base, 58.6 grams of heroin, 3.2 grams of marijuana, and $36,000 cash.

Defendant waived his *Miranda* rights and offered a verbal statement.  Defendant admitted to selling various forms of cocaine and identified the cash as proceeds from selling cocaine. Defendant also admitted owning the firearms, despite his

knowledge that as a felon he was not permitted to own them. Defendant claimed that the heroin was for his personal use.

## II.   DISCUSSION

## A.   Protective Sweep

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)(citing *Brigham City v. Stewart*, 547 U.S. 398, 403 (2006)).  The "presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness."  *Id.* (citing *Brigham*, 547 U.S. at 403)(quotations omitted).  In the absence of a warrant, agents can "perform cursory 'protective sweeps' of large areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched." *U.S. v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008)(citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990)).  A protective sweep is permissible if the following requirements are met: 1) agents "must have entered legally and for a legitimate law enforcement purpose;" 2) agents "must have a reasonable, articulable suspicion that the area to be swept contains a person posing a danger to those on the scene;" 3) the sweep must end when agents "have dispelled their reasonable suspicion of danger, and they

may not continue the sweep after they are no longer justified in remaining on the premises." *Id.* at 286 (citing *U.S. v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004). Agents may enter legally if entry is based on exigent circumstances. *See id.* at 287-88. The Fifth Circuit considers the following factors in determining the presence of exigent circumstances: "(1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the contraband's possessors know police are on their trail; and (5) the ready destructibility of the contraband." *Vasquez*, 963 F.2d at 180 (citing *U.S. v. Thompson*, 700 F.2d 944, 948 (5th Cir. 1983)). Entry based on exigent circumstances is "particularly compelling in narcotic cases because of the ease . . . with which they may be destroyed." *U.S. v. Riley*, 968 F.2d 422, 425 n.6 (5th Cir. 1992). However, "the mere presence of weapons or destructible evidence does not alone create exigent circumstances." *U.S. v. Capote-Capote*, 946 F.2d 1100, 1103 (5th Cir. 1991)(citing *U.S. v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986). "The government bears the burden of proving the existence of exigent circumstances." *U.S. v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009)(citing *U.S. v. Rodea*, 102 F.3d 1401, 1405 (5th Cir. 1996)).

The Government argues that the agents had a reasonable suspicion that a person in the residence could have presented a threat to the officers' safety or destroyed evidence.  In support, the Government directs the Court to evidence of drugs and weapons in the residence and surveillance cameras outside the residence.   It contends that the cameras could have alerted persons inside to the presence of officers outside.  In order to show exigent circumstances, though, the Government must point to more than a mere possibility of the presence of persons in a residence.  *U.S. v. Menchaca-Castruita*, 587 F.3d 283, 295 (5th Cir. 2009)(while a possibility always exists that some "unknown person might be hiding somewhere inside a residence . . . [a] finding of exigent circumstances must be based on more than a mere possibility").  The Court finds *Menchaca-Castruita* instructive here.  In that case, the Fifth Circuit held that the government failed to demonstrate the presence of exigent circumstances to render a protective sweep valid.  *Id.* at 294. At the time agents arrived at the defendant's house, he had already departed.  *Id.* at 286.  The defendant's landlord presented no information to the agents that suggested that other persons were present; rather, she told the agents that the defendant was the only person she saw when she looked through his window.  *Id.*  Further, there were "no sounds coming from inside

the residence to suggest that someone might have remained behind." *Id*.

Here, agents did not reach defendant's residence until after they placed defendant in custody.  Agents monitored defendant's residence for approximately thirty to forty minutes before they executed the protective sweep, but the only person who left the residence in that time was Knapper.  Further, according to Detective Barteet, Knapper told agents only about drugs and weapons; she told agents that no one else was in the residence. Finally, the Government presented no evidence that the agents saw lights, heard movement, or saw anything else to indicate the possibility of other persons in the residence.  Nor was there any evidence that defendant sold drugs with others, or was in a position to warn anyone in the house once he was detained.

In contrast to these facts, the Fifth Circuit regularly finds exigent circumstances when the Government makes a showing of the presence of other people on the premises.  When the Government demonstrates that agents had actual knowledge of other persons inside a residence, a finding of exigent circumstances will be upheld.  *Mata*, 517 F.3d at 289 (before warrantless entry, agents "knew with absolute certainty" that contraband was in the building and witnessed several people running in different directions around the building); *Riley*, 968 F.2d at 425 (warrantless entry was reasonable when accomplice told agents

11

that "there was a large sum of money, a handgun and another individual at the residence he had just left").  In the absence of actual knowledge, exigency may be demonstrated by showing that agents heard or saw movement that suggested the presence of other persons in the residence.  *U.S. v. Ibarra-Zelaya*, 465 F.3d 596, 605 (5th Cir. 2006)(before warrantless entry, officer heard "multiple people moving around inside the apartment" and "observed several people fleeing the apartment via the balcony"); *U.S. v. Maldonado*, 472 F.3d 388, 392 (5th Cir. 2006)(agents observed "someone open the trailer door, peek out, and then quickly close the door" before they initiated the protective sweep).  Here, the Government has not presented any evidence that agents had a reasonable basis to believe that there was anyone in the residence.  Indeed, the testimony demonstrates that agents were told the opposite – that Knapper and her children were the only people in the residence.

The Government also argues that the mere presence of surveillance cameras indicates the possibility that other persons are in the residence.  One court has held that the presence of surveillance cameras outside the house "could indicate a heightened possibility of a surprise attack." *U.S. v. Davis*, 471 F.3d 938, 945 (8th Cir. 2006).  In *Davis*, the Eighth Circuit held that a protective sweep of a barn located approximately 100 yards from the defendant's house was valid.  *Id.*  The *Davis* court,

12

however, did not premise its finding of exigency on the presence
of the cameras alone.  *Id.*  The court held the protective sweep
to be justified based on the totality of the circumstances:
officers observed the defendant making multiple trips to the
building in question; three or four vehicles were parked on the
property; prior intelligence indicated that other individuals
were present, the defendant possessed firearms, and the defendant
associated with dangerous individuals; and the presence of
surveillance cameras.  *Id.*  Here, the Government can demonstrate
only prior knowledge of firearms and the presence of cameras.
Without more, the totality of the circumstances falls short of
demonstrating the need for the warrantless entry.  *See Menchaca-
Castruita*, 587 F.3d at 296 (using a totality of the circumstances
standard).

**B.   Independent Source Exception**

Finding the absence of exigent circumstances justifying a
protective sweep does not end the inquiry, though.  The seizure
of evidence pursuant to a warrant satisfies the independent
source exception to the exclusionary rule.  Under the independent
source exception, "information which is received through an
illegal source is considered to be cleanly obtained when it
arrives through an independent source.  *U.S. v. Hearn*, 563 F.3d
95, 102 (5th Cir. 2009)(citing *Murray v. U.S.*, 487 U.S. 533, 538-
39 (1988)).  The independent source exception applies to "both

13

evidence seen for the first time during the lawful search and
evidence seen in plain view at the time of the warrantless
search." *Hearn*, 563 F.3d at 102 (citing *Murray*, 487 U.S. at 541–
42).  In order to demonstrate that the subsequent lawful search
is "genuinely independent" of an earlier illegal search, the
government must show "(1) that the police would still have sought
a warrant in the absence of the illegal search; and (2) that the
warrant would still have been issued . . . if the supporting
affidavit had not contained information stemming from the illegal
search." *U.S. v. Runyan*, 290 F.3d 223, 235 (5th Cir.
2002)(citing *U.S. v. Runyan*, 275 F.3d 449, 464 (5th Cir. 2001)).

In *Runyan I*, the Fifth Circuit held that the police violated
the defendant's Fourth Amendment rights when their search of
computer disks exceeded the examination performed by private
searchers. *Runyan I*, 275 F.3d at 464.  After the illegal search,
though, police executed a second search pursuant to a warrant.
*Id.* at 454.  The court remanded the Fourth Amendment issue to
determine 1) whether police would have sought the warrant had the
police not exceeded the scope of the private search, and 2)
whether the magistrate would have issued the warrant had the
warrant not contained a reference to the illegal search.  *Id.* at
468.  The *Runyan II* court held that statements made to the police
were sufficient justification to seek a warrant for the
defendant's home and computer.  *Runyan II*, 290 F.3d at 236.  The

14

court also held that the warrant contained sufficient information to support a finding of probable cause, even if a passing reference to the illegal search was omitted from the warrant application. *Id.* at 237.

Here, Officer Modica testified that he drafted the warrant application using information from Special Agent Nicholson and Detective Barteet. Special Agent Nicholson informed Officer Modica about the detention of defendant and accompanying seizure of three ounces of cocaine. He further told Officer Modica that a cooperating source told investigators that he had been at the defendant's residence in the past twelve hours and had witnessed the defendant in possession of a large quantity of cocaine and heroin. Special Agent Nicholson also told Officer Modica that an anonymous source had first hand knowledge of narcotics and currency located in the defendant's residence. Detective Barteet testified that he described defendant's residence to Officer Modica and described the Knapper interview, which included the statement that drugs and guns were in the residence. Officer Modica said that information alone, without reference to the items viewed in the protective sweep, constituted probable cause. Accordingly, although Detective Barteet told Officer Modica about the protective sweep, Officer Modica did not include any reference to the sweep in his warrant application. Officer Modica acknowledged that the warrant application contained a

reference to drug paraphernalia, but testified that he included the reference based on the amount of drugs found on defendant, not on the items viewed in the sweep.  Moreover, the confidential informants told agents about the substantial amounts of drugs in the residence, which is also an independent basis for the paraphernalia request.  Because the warrant process began before the search, and no information from the search was included in the warrant application, the Court finds that there is no link between the earlier illegal entry and later legal entry.  *U.S. v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000)(no causal link between the initial illegal entry and later search and seizure pursuant to a valid warrant).  Further, there is no evidence that any agents told the magistrate about any items viewed during the protective sweep.  *Id.* at 327-28 (independent source exception applies when evidence viewed from the illegal entry was never mentioned to the judge issuing the warrant).  Accordingly, the Court finds that the independent source exception applies and that the evidence was validly seized.

**III. CONCLUSION**

 For the foregoing reasons, the Court DENIES defendant's motion.

 New Orleans, Louisiana, this <u>28th</u> day of September, 2011.

_____
                    SARAH S. VANCE
         UNITED STATES DISTRICT JUDGE